JEANNE M. CAMPBELL, APPELLANT, V. MICHAEL L. CAMPBELL, APPELLEE.

285 N. W. 2d 111

Filed November 6, 1979. No. 42432.

Colfer, Lyons, Wood, Malcom & Goodwin, for appellant.

John J. Battershell of Cunningham Law Office, P.C., for appellee.

Heard before KRIVOSHA, C. J., BRODKEY, WHITE, and HASTINGS, JJ., and HOWARD, District Judge.

HOWARD, District Judge.

In an action for dissolution of marriage brought by Jeanne M. Campbell, appellant, against Michael L. Campbell, appellee, the decree, in part, awarded custody of the minor child of the parties to appellee. Appellant assigns as error the trial court's failure to award custody of the child in her, and also that the decision is contrary to law and the evidence and is an abuse of discretion.

At the time of trial Richard Todd, the child of the parties, was a little over 13 months old. The parties reside in McCook, as do both sets of grandparents. At trial Michael was 21 years old and Jeanne was 20. Michael was employed as a Honda mechanic and lived with his brother Tim, who worked for an electronics firm, of which their father is president. Jeanne lives at home with her parents. Michael has had possession of the child since April 1978, and by stipulation of the parties, approved by the court, was granted custody in May 1978, before the trial in August. Before the separation, the grandparents divided babysitting chores during the times Jeanne was employed, but Jeanne stayed at home with Todd from December 1977, until March 1978, when the separation occurred. Both sets of grandparents have a deep interest in Todd and desire to help in his upbringing.

The marriage was a stormy one. Jeanne testified that Michael had struck her several times both before and after the marriage. The record is silent as to the severity of the blows or other details. Michael was suspicious and jealous of Jeanne. Conflicting testimony concerning the behavior of Michael and Jeanne at parties and elsewhere ac-

counts for much of a lengthy record. There was no unfavorable testimony as to the care of Todd while under the attention of either party. It is conceded that when Michael was 16, he and Jeanne were going together and as a consequence of a breakup, Michael shot himself and was hospitalized.

Following an argument on March 17, 1978, Michael took Todd to his parents' home and stayed there that night, taking Todd to visit Jeanne the next day. She had moved to her parents' home. A few days later he was served with a summons in this action. Reconciliation was discussed, and on March 31 Jeanne told him she wanted to go to Topeka to see her maid of honor at the wedding. They went to her parents' home, talked it over, and Michael told her he didn't care if she went "as long as she went to get her head on straight, to find out what she wanted." Todd was left with Jeanne's parents. Michael understood she was to return on the following Monday, but she returned 6 weeks later. She had gone instead to Dallas, Texas, where, it is admitted, she cohabited with a McCook friend of both parties and engaged in sexual relations with him. Jeanne did call Michael and her parents from time to time, but for about 10 days after she left, she did not disclose where she was. She had told both Michael and her parents that she was going to Topeka. Michael testified, and Jeanne denied, that in a telephone conversation while she was in Dallas, when asked what she was going to do with Todd, she replied that the person with whom she was living "makes up for Todd."

Todd has been cared for by Michael and his parents since April 1978. A babysitter stays with Todd during the day at Michael's home, and after work Michael takes Todd to his parents' home where they have dinner, and he stays there with Todd until Todd goes to bed. In the morning he picks up Todd and the babysitter and takes them back to his own home. Jeanne has Todd from Friday evening until Sunday

evening. She testified she intends to get a job, stay with her parents until she is financially secure, and go to a beauty school, during which time her mother would take care of the child.

There appears to be no question that Todd has been well cared for while in the custody of Michael, and there is no evidence of maltreatment or neglect by either party before the separation.

In his decision, announced from the bench, the trial judge emphasized his concern over Jeanne's leaving the child for the Dallas episode and concluded that "there is at this point a bit more stability in the father than in the mother." He pointed out that for a while the grandparents "are going to have to be a rock in the storm."

In cases involving questions of child custody, the findings of the trial court will not be disturbed unless there is a clear abuse of discretion or the decision is against the weight of the evidence. Mason v. Mason, 200 Neb. 476, 263 N. W. 2d 865. Section 42-364, R. R. S. 1943, provides: "In determining with which of the parents the children, or any of them, shall remain, the court shall not give preference to either parent based on the sex of the parent and no presumption shall exist that either parent is more fit to have custody of the children than the other."

We cannot say that, in determining the more stable environment for the child, the trial court abused its discretion by giving weight to the then recent actions of the mother in leaving the child for an extended time in order to pursue her own interests in a manner suggesting her immaturity and a degree of instability. Nor can it be said that the weight of the evidence shows Michael to be unfit, especially in view of his unblemished record as a custodian during approximately 4 months before the trial. The trial judge, mindful that the progress of Todd can be monitored and assisted by the grand-

parents, residing locally, made a decision subject to change on readily available evidence of changed circumstances. Finally, the inestimable advantage of the trial judge in observing the witnesses during the lengthy trial must be conceded.

AFFIRMED.